Good morning everyone. Our first case today is Gilbank v. Wood County Department of Human Thank you, Your Honor. May it please the court, Joseph Diedrich for the appellant. Federal courts are courts of constitutionally and statutorily limited jurisdiction. Federal courts also have an unflagging obligation to properly exercise that jurisdiction when it is called upon. The district court here transgressed these principles in two directions. First, the district court incorrectly held that it lacked jurisdiction under the Rooker-Feldman doctrine. Second, the district court improperly assumed hypothetical jurisdiction and issued an advisory opinion on the merits. This court should therefore reverse in part, vacate in part, and remand. Turning first to the Rooker-Feldman issue, the U.S. Supreme Court made clear in Exxon that Rooker-Feldman is a narrow doctrine that applies only when the relief and injury elements are satisfied. Specifically, a federal plaintiff must complain of injury caused by a state court judgment, not by the conduct of an adversary. Mr. Diedrich, let's take a look at the first, let's look at the Claim 1. And so there are several 1983 violations alleged in that violation. So if we could just jump straight to, let's look at the Fourth Amendment. And so let's talk through why Rooker-Feldman, in your opinion, would not apply to the, I believe we've agreed to the seizure as well as, or the probable cause determination, I guess, or the compelled urinalysis. So maybe talk us through which claims did not apply. Yes, Your Honor. So Rooker-Feldman does not apply to any of the claims. It appears the defendants have conceded that the urinalysis-related search and the unconstitutional questioning without an attorney present claim do not fall within Rooker-Feldman's ambit. Then there's another claim about the unlawful seizure of TEH without a warrant and without lawful justification. That's the August 21 seizure? Excuse me, Your Honor? You're referring to the seizure on August 21, at least when she went to her father's custody? Correct, Your Honor. The day of the arrest, yes. Okay. Could I ask you to identify any injuries that you think the plaintiff is alleging that occurred after the August 23, 2018 court order putting the child in the custody of her father? Your Honor, I may not be perfectly clear on the dates, but there are due process claims related. August 23 was the court order, right? That's two days after the arrest and the seizure, correct? That court order only determined that there was probable cause to seize the child initially under the Wisconsin Children's Code. He's trying to direct you what injuries resulted that you're alleging occurred after that August 23 date. Correct. The Children's Court proceeding then went on, and there was evidence submitted, and one of Ms. Gilbank's claims is for due process violations based on submitting false and incomplete information about Ms. Gilbank and about Mr. Hoyle. That tracks closely to the claim submitted in the Bayer v. Campbell case from the 11th Circuit. Sorry, I need to go back. I'm looking at the August 23 order, which you said determines only probable cause. It's called Order for Temporary Physical Custody. Yes, Your Honor. What am I missing? Perhaps you're missing nothing. So let me go back to my question. What injury does plaintiff allege she suffered after this court order was entered? She might not be alleging any injury. I don't see one. Frankly, I don't see one either, Your Honor. Okay. Because that seems to me to have pretty serious implications for Rooker Feldman. Even if you don't think the state courts were fair, even if you don't think they gave her sufficient notice for that hearing, for example. Do you think a plaintiff or somebody who's a defendant in state court who has an ex parte temporary restraining order against them, say shutting down their business or, let's say, enforcing a non-compete or something like that, do you think they can go into federal court and get an order setting that aside or seek damages because they did not get proper notice before the TRO was entered? Potentially, Your Honor. Do you think so? Well, yes. It depends on both the chronology and a comparison of the relief requested. So the chronology matters because if you compare the facts in this case versus the facts in the Swartz v. Hartland Equine Relief case, they're reversed. There, the probable cause determination and a judicial order came before the government officers seized the horses. And so Rooker Feldman applied there. Here, the causation is reversed. And as this court made clear in the Jensen v. Foley case, when a judicial court later on approves of the probable cause later on, that doesn't… We were just looking at this, though. That order does not just determine there was probable cause to take the child into custody. It orders custody going forward, correct? Correct, Your Honor. Okay. So focusing on the question of relief, if a party goes into federal court seeking just damages, is that sufficient in your view to avoid Rooker Feldman if all of the other criteria are met? It depends on what the relief was in the state court. So here, for instance, I agree with Your Honor that the state court adjudicated probable cause and custody going forward. Here, Ms. Gilbank does not seek any order reversing or modifying or saying anything about custody whatsoever. She doesn't care at all about the state court order at this point. She has the child. Precisely, Your Honor. She's not seeking review and relief from the state court order at all. She says, I don't care about the state court order. Precisely. And that's element four of the Exxon Mobil test. Precisely, yes. And so in a case, Your Honor, just to return to your question briefly, where the relief is injunctive, for instance, and we come to the federal court and the request for a reversal of that injunction would be moot, then a damages request based on the conduct of officers would be sufficient to make Rooker Feldman inapplicable. How about just – but all she's seeking is damages, right? Correct. And you think that's sufficient to get her out from under this? In this case, yes. Why? Why in this case? Because she does not seek appellate review and relief from the state court custody order. Okay. But she is seeking damages for an injury inflicted by the state court orders, correct? That's what you told me earlier. There's no other injury after that court order. I don't agree that the injury was inflicted by the court order. I agree that the – I'm saying that the injury was inflicted by conduct that began and was committed by the defendants before the court order. What are those? The social workers and the police officers doing – taking the child, doing the urinalysis, doing the questioning without an attorney present, submitting the false information in support of that judicial petition. All of these claims relate to the conduct of the social workers and the police officers. So the constitutional violations are the Fourth Amendment and the Fifth Amendment that happened before? And the Fourteenth Amendment. And the due process. Yes. So the contention is after August 23rd, there are no injuries beyond that. Correct, Your Honor. And certainly no injuries caused by the order itself as opposed to conduct caused by conduct of the officers. And Bear v. Campbell makes it clear that the injury has to be caused by the judgment itself, not by the defendant's conduct, even if that conduct occurs during judicial proceedings or even if that conduct also leads to the state court judgment. What do you do with the many Seventh Circuit cases that apply Rooker-Feldman to damages claims? I would say we have to analyze each one of them and look, does the relief requested require this court to – or the lower federal court to exercise appellate jurisdiction? How do we recognize that? If the state court ordered a damages remedy, for instance, and the plaintiff then comes to federal court asking for the federal court to amend that judgment, reduce the damages award, that would be a situation where the federal court is exercising appellate jurisdiction. Yes. That's the easy case. Okay. How about – well, how about this case where the argument is the state court denied me due process of law, went forward and determined custody of my child without notice to me, and then made bad decisions putting my child in danger, and I want damages for that. You told me at the beginning of this argument you could not identify any injuries plaintiff suffered after that court order was entered that would be independent of that court order, right? Well, respectfully, Your Honor, I disagree, and if I communicated otherwise, I retract that. Tell me what injuries plaintiff suffered. It's alleging she suffered after the August 23rd court order. She did not suffer additional injuries beyond that. She suffered injuries before that court order and – She's claiming she lost custody of her child for a year, right? Correct, Your Honor. And all but two days of that was with blessing of the court orders, correct? The conduct that led to the injury was precipitated by the conduct of the officers and the social workers. If that conduct also leads to a state court order – Would she have been injured without the court orders? Yes, Your Honor. Tell me how, when, how and when. She was separated from the child. She has a constitutional injury resulting from the unlawful search related to the urine sample, the unlawful questioning, the submission of false and incomplete information, the conspiracy claim. All of this occurred – How did the false information – First of all, I want you to tell me how you think it hurt her apart from the court order, and then second, tell us what you think the false information was. The false information and incomplete information related to the information specifically in the judicial petition for the Child Protective Services order, and that was submitted before the court order. It was submitted by the social workers and the police officers. And I want to refer back to the Bear v. Campbell case, which talked about the exact same claim in a child custody proceeding. Yes, and Bear is very difficult to reconcile with Seventh Circuit precedent. Do you want us to split and go in the direction of the Eleventh Circuit? I don't necessarily agree that it's difficult to reconcile, Your Honor. We cited in our briefing eight child custody cases, including multiple from this circuit, including the recent cases in Royal and Sanders, as well as the older case of Brokaw, all three from this circuit that address very similar situations and hold that Rooker-Felman does not apply to the child custody cases where the state court determined child custody. The plaintiff in federal court does not dispute that or ask for appellate review from that. I'd like to save the remainder of my time. Could I ask you, though, to tell us what you think the false and misleading information was? The false and misleading information is identified in the complaint. I refer Your Honor there. It relates to her use of drugs and potentially other things. I don't have that in front of me right now, and I apologize for that. Okay. I mean, I know you all took this case on at our request, and we're very grateful for the help you've provided. And I know that that was a pro se complaint, and I understand you're not necessarily—you didn't draft it.  Your Honor, whether the information was false or inaccurate is a merits question that has nothing to do with Rooker-Felman, and that would get into our second point about the hypothetical jurisdiction and the advisory opinion. On that point, with my colleague's indulgence, Mr. Dietrich, I want to ask you, I would agree with you that the district court opinion and judgment are at least ambiguous. They're kind of confusing about what's merits, what's jurisdiction, and the district judge was not drawing the line defendants are drawing now between the August 23rd order and earlier claims and so on. I wonder—in a number of situations, we have cleaned up such matters, basically, where—and modified judgments. And I wonder whether your argument doesn't basically just ask us to assume the worst about the district judge's approach to the case rather than give him the benefit of the doubt. So there's one telltale sign that makes this case different from those other cases. The district court explicitly used the word even if I, quote, assumed that Rooker-Felman doesn't apply, and then he proceeded to adjudicate or render an opinion on everything else. Assume is the very word that the U.S. Supreme Court identified in the Steel Company case as what district courts are not permitted to do. This court has said in the Lebovich case that when a district court improperly— I see my time is up. May I finish my answer? You may finish. Go ahead. When a district court exercises hypothetical jurisdiction, all this court can do is vacate that opinion because it is ultra viris and void. And therefore, all that comes up here is a without prejudice judgment based on the lack of jurisdiction. The defendants had to file a cross appeal if they wanted to enlarge that judgment to one with prejudice based on the merits. Where does the judgment say it's without prejudice? It doesn't, Your Honor. So we look at Rule 41B and the case law interpreting it. The only valid part of that judgment is for lack of subject matter jurisdiction because the rest of the judgment was under hypothetical jurisdiction. All right. Thank you, Mr. Dieter. Thank you, Your Honor. Who's first? Ms. Kaur? May it please the court. My name is Anit Kaur, and I represent the Wood County defendants in this matter. Along with me is Attorney Jason Just. He represents the Marshfield defendants. I will be addressing just very briefly the 1985 portion and the Rooker-Feldman argument, and then Attorney Just is going to address the second piece, which is that the district court in this case exercised actual jurisdiction, not hypothetical jurisdiction as to those claims which Ms. Gilbank was asserting were independent. And at the end of our argument, we would ask that the court affirm the district court's decision. Specifically, we would ask that the court find that the district court correctly applied the Rooker-Feldman doctrine to Ms. Gilbank's claims arising out of the state court custodial decision and dismissed her other claims on the merits. Could I ask you about ExxonMobil and the language of the court used in ExxonMobil? The way ExxonMobil has been interpreted, it can be interpreted at least, after the colon, cases brought by state court losers complaining of injuries caused by state court judgment rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. That and, okay, I'm troubled by that and. That and seems to me to indicate another element, which is inviting district court review and rejection of those judgments. But it seems to me that you're reading the and as just part of the injury element, that if the injuries are derived from the state court judgment, then necessarily the plaintiff is arguing that the district court must review and reject the state court judgment. That's correct, Your Honor. That's how I interpret the ExxonMobil decision. I don't interpret that one sentence as a test. I look at the whole decision and subsequent decisions thereafter. And based on those decisions and the Seventh Circuit's decisions, it's clear that we're looking at the injury. Someone who's complaining that they were injured by a state court decision is necessarily asking the district court to review and reject that decision. And so, and that's the exact reason why I believe that the Seventh Circuit's current test is completely aligned with Supreme Court precedent, both ExxonMobil and subsequent decisions after that. Ms. Gilbank has proposed an entirely new test in this case, and that test is inappropriate. Her test, again, focuses on the one sentence in ExxonMobil, and that's not appropriate. We have to look at the entire decision. And if we look at the entire decision, the court went on to say in that case, in ExxonMobil, that the doctrine also applies to those cases which are essentially inviting review and rejection of the lower court decision. And then in Lance, another decision, another Supreme Court decision, excuse me, from 2006— So do you agree that the Fourth Amendment claim for the urinalysis and the seizure prior to August 22nd, I believe? Correct. That would not have fallen under the ExxonMobil-Rooker-Feldman explanation? And so, Your Honor, if this wasn't clear in our briefing, it depends on the claim that Ms. Gilbank is asserting based on that UA. And so what I mean by that is the way that I interpret the district court's decision is the district court looked at that UA claim and said to the extent that she's claiming that that UA caused an injury later on— Yes, Your Honor. If she's complaining of an independent injury, that the UA itself was unlawful and we shouldn't have done it, then it does. But if she— The argument is that she did not consent. Correct. That is Ms. Gilbank's argument, that she did not consent. Correct. And the district court addressed that on the merits and, quite frankly, that was just a baseless allegation. There was testimony from her afterwards agreeing that it was voluntary, that she had consented. She admitted that in the proposed findings of fact. And so that was addressed on the merits. But on that UA analysis, the district court looked, gave her the benefit of doubt, and said to the extent that she's making an independent claim— I'm sorry. Let me try to rephrase my question. Is it your position that the court erred in finding that Rooker-Feldman applied to that analysis to Gilbank's claim? No, I do not believe the district court erred. Okay. And to explain to me why not. So the court looked at that conduct, the UA, in two separate ways. So to the extent—Ms. Gilbank's complaint was confusing. And the court said to the extent that she's claiming that the injury that this UA caused was the removal of her daughter, then it falls under Rooker-Feldman. But giving her the benefit of doubt, and if she's claiming that this UA was a separate injury in itself, that they had no basis to ask her for the UA, that it wasn't voluntary, in that case, it's addressed on the merits. So the court addressed in two separate ways. So the first way, if it involves the state court determination of probable cause, Rooker-Feldman applies. If it was a violation of the Fourth Amendment for illegal search, which is what Gilbank has argued continuously, then you agree that it should have been decided on the merits. I agree that it should have been— Do you think that the district court reached the merits? Yes, the district court did. And where—what basis? Because the argument that counsel has made is that when you made the decision that Rooker-Feldman applied to all of her claims, then therefore going to the merits, you know, there was advisory. The court can't consider it. So the court—if you read the first and last portion of the court's decision, the court says most of her claims are dismissed on the Rooker-Feldman doctrine. And then the court goes on to address the UA, the Fifth Amendment claim, and the due process claims independently. I think on page 13 of the appendix, it says, but even if I assumed that Gilbank suffered injuries that were not caused by or instructively related to the state court's decision. And then we go on from there. The argument we heard from counsel is that because of that sentence, everything beyond that becomes advisory. Direct me to where that statement does not foreclose the rest of the district court's analysis. So counsel—actually, that's one piece that I wanted to address. Because what counsel said is the court said, even if I assumed that the Rooker-Feldman doctrine did not apply. As you just read, Your Honor, that's not what the court said. The court said, even if I assumed that Gilbank suffered injuries that were not caused by or intertwined with the state court's decision, then those claims are also dismissed on the merits. That's what I read. Correct. And then the court goes on to discuss the UA, and then the questioning, and then the due process claims on the merits. And so, again, the court is looking at these as giving her the benefit of the doubt. If she's claiming that these were separate, independent injuries, aside from the state court judgment, then they're addressed on the merits. So some of the claims were dismissed with prejudice. Some were dismissed without prejudice. Yes, Your Honor, some of the claims were dismissed with prejudice. We have to read between the lines on the judgment to figure out which is which. That's what I'm asking. Right? We do that sometimes for district courts, who are busy and dealing with a complicated mess of a pro se complaint here about a very serious matter for this woman. I don't disagree with that. I agree that we do sort of have to read between the lines, as you said, Your Honor. Ms. Corkin, I want to go back to Exxon Mobil, and I want to ask you for your reaction to something. So I'm going to read again the way the court wrote it. Cases brought by state court losers complaining of injuries caused by state court judgments were rendered before the district court proceedings commenced and inviting district courts to review and rejection of those judgments. That's the way the court wrote it. This is the way you read it. Cases brought by state court losers complaining of injuries caused by state court judgments were rendered before the district court proceedings commenced, period. Why would the Supreme Court write and inviting district court review and rejection of those judgments if they didn't mean it? I understand that, Your Honor. But, again, I don't read that sentence to be a test. I read it to be a summary of the underlying decisions, not a specific this is exactly what has to be. Where I struggle with Rooker-Feldman is it's very, very narrow. It's never been applied except to Mr. Rooker and Mr. Feldman. It's very, very narrow. And Plaintiff has a difficult case here, and there are all kinds of other doctrines that may bounce her out of court. I'm just not sure that we should read that test out of Exxon Mobil and apply Rooker-Feldman maybe as broadly as we have in the past. I think that this is the exact type of case, Your Honor, where Rooker-Feldman does apply. But she's saying I get the injury point, but her point is I could care less about the order. The child is back with me. I don't care about the district court's order. And what we're doing is we're conflating injuries. So we're saying the injuries must invite district court review and rejection of those judgments, and, therefore, the injuries and the other prong are conflated into one. And I'm having trouble seeing how they're not two instead of one, because in order to get one, we have to read that entire clause right out of the Supreme Court's opinion. I think we have to read the opinion as a whole and subsequent opinions thereafter. My time is up. May I finish? Yes, oh, yes. And the focus is on the injury piece, because when you look at the injury, you can see that they're ultimately asking you to review and reject the opinion. Well, Ms. Gilbank says that's not what she's doing. She is. The Supreme Court says nothing about seeking monetary damages. It simply relates to review and rejection. You have to review and reject the underlying state court decision. If the court may allow me to just follow up, though. If the injury is the Fourth Amendment, 5th and 14th, and he says nothing beyond that, my injury is the urinalysis, the seizure without probable cause, and then the lack of a Fifth Amendment as far as lack of consent to that. If those are the injuries, those are the constitutional violations that occurred prior to the court's determination. So two parts to that, Your Honor. That's contrary to her complaint. In her complaint, it's very clear what her injuries are. She lists them explicitly. Her injuries are the separation from her child. The anxiety. The anxiety caused by it, the placement with Hoyle, the potty regression that was caused by that. All of those are injuries caused by the state court judgment. Here, the district court did exactly what it should have done. It gave Pro Se Gilbank the benefit of doubt and said, to the extent, Ms. Gilbank, that you're claiming you had some independent injury, that the UA, the questioning, then those are dismissed on the merits, not under Rooker-Feldman, on the merits. Thank you. Thank you. Mr. Just. May it please the court, my name is Jason Just. I represent the Marshfield Defendants, Detective Iverson, and the Marshfield Police Department. The district court did not engage in hypothetical jurisdiction. Rooker-Feldman is a claim-by-claim analysis, and the district court engaged in such an analysis, holding that five of Ms. Gilbank's eight identifiable claims were barred by the Rooker-Feldman doctrine. Drawing all reasonable inferences in her favor, the district court acknowledged that Ms. Gilbank may have asserted three claims that were independent of these state court proceedings. Those were the warrantless year analysis, the Fifth Amendment violation, and then the broad and general due process violations. In doing so, the district court exercised actual jurisdiction and analyzed each of those claims on their merits, addressing a variety of meritorious offenses that were fully briefed and raised by the defendants, such as absence of a constitutional claim, issue preclusion, insufficiency of evidence, and failure to state a claim. Because the claims were dismissed on the merits, no enlargement of rights were sought, and cross appeals were not necessary, as Ms. Gilbank argued for the very first time in her reply brief. When issues are fully briefed, especially during summary judgment, upholding dismissal on alternative grounds, as this court has already acknowledged today, is consistent with this court's past precedent, such as in O'Brien v. Caterpillar, where the court held that it may affirm a judgment on any ground supported by the record, so long as the issue was adequately raised in the district court, and the opposing party had the opportunity to contest it. What do we do, Mr. Hirst? Mr. Jess, I apologize. With the allegation that gets in the reply brief, the Lourd case stops us. It stops us from being able to provide greater relief than what was requested or what was provided by the district court below. The argument by Ms. Gilbank is that below, this case was dismissed without prejudice. Issue preclusion, qualified immunity, anything beyond that without you filing a cross appeal doesn't allow this court to review those arguments, and I believe there's leaning on the Jeannine case out of the Supreme Court. That's simply not the case here, Your Honor. The district court's opinion is not concisely written, as this court's already discussed,  but the court went on for two pages to analyze these additional issues outside of the five claims that were identified as being barred by the Rupert Feldman Doctrine, analyzed each of them on their merits, and generally upheld, granted the defendant's motions for summary judgment. Would you agree that there are portions of the court's opinion  I'm looking at the first paragraph, the other injuries about which Gilbank complains were either already addressed by the State Juvenile Court or are not constitutional violations? That sounds to me like a merits call. Correct. And I believe the fact that And the judgment just says dismissed. Correct. Okay. I believe the court, you know, there was a reason the court went on for two full pages to analyze these three claims and held there was a lack of evidence, there's no constitutional violation for the Fifth Amendment claim because no information from that interrogation was used against her in a criminal proceeding and the Fifth Amendment does not apply to state child proceedings. So even though the court does not say In the same with the Fourth Amendment, in the sense that there was no additional Miranda questionings regarding the criminalizing of the possession of methamphetamine or use of methamphetamine, it was more so the custody where the temporary custody of the child because she was being arrested for possession of methamphetamine. Correct. And I believe Ms. Gilbank actually conceded that no information was used against her in the criminal context regarding the questioning on the methamphetamine. Upholding the district court's dismissal in this case on any grounds this court sees fit is, again, consistent with the court's past precedent, such as in Jensen v. Foley, where this court found that the plaintiff's claims were not barred by the Rooker-Feldman Doctrine but upheld dismissal on an issued conclusion. Also qualified immunity, such as in Royal v. Payne, where this court noted that most defendants in a child custody case will be entitled to qualified immunity. The defendants in this case are civil servants. They've had this matter hanging over their head for three years now. This is not a case that was dismissed at the pleading stage. Every claim, every defense was fully briefed, argued, and each side had the opportunity to challenge those sufficiently. And we ask that the court uphold the district court's dismissal, both under the Rooker-Feldman Doctrine and also the independent claims on their merits. Thank you, Mr. Justin. Mr. Diederich, would you like some rebuttal time? I would, Your Honor. We'll give you three minutes. Thank you, Your Honor. I want to address two primary issues, starting first with the hypothetical jurisdiction issue. Normally, a district court can rule in the alternative, can give the benefit of the doubt. The one time it can't do that is when subject matter jurisdiction is at issue. The district court here thought it was ruling on the merits of everything else, and that would normally lead to a with prejudice dismissal. But here, if you agree with me that it exercised hypothetical jurisdiction, then what comes up is not a with prejudice judgment but a void judgment. That is where our cross-appeal argument comes from. The other point that I want to address is about the injury. Ms. Gilbank raises a number of constitutional claims in her complaint and then talks about different injuries she suffered. Do you agree, then, counsel, that if we find that the court did dismiss some claims with prejudice and dismissed some claims without prejudice, then the Jennings, the Supreme Court case, the Jennings case would not bar the court considering disqualified immunity, issue preclusion, collateral estoppel, all those issues that were raised in the cross motion for summary judgment? So if there was perhaps a narrow, narrow part of the district court's opinion that was not hypothetically issued, then this court would not be barred by the cross-appeal rule. But there is still what the Supreme Court has described as a general rule that we don't consider issues not decided below or for other discretionary reasons. And we went through in our brief a number of different reasons why we would request that this court remand instead of deciding issues like issue preclusion and voluntariness for the first time, where the district court did not engage in a thorough discussion. Well, if it was remanded, what elements do we have, at least at the summary judgment stage, that there was a Section 1985 violation? I apologize, Your Honor, but I ask you. Section 1985 violation, what facts or allegations do we have to support that claim? The Section 1985 conspiracy is supported by the inferences that the social worker and the police officer had discussions prior to actually stopping Ms. Gilbank on the day of the arrest and the seizure of the child. There's a discussion in the complaint about how they colluded beforehand, and that would be part of the conspiracy allegation, which is not barred by the statute of limitations. They could have just consulted with each other, as one would normally expect, where you've got a child in the custody of a parent who is an active meth user. I see my time is up. May I address that, Your Honor? Yes. So the complaint, the facts, are candidly underdeveloped. On remand, it stands to reason that given the request for appellate counsel, that Ms. Gilbank might be able to find counsel below, we would expect to be able to further develop that record and do summary judgment over again. And that's one of the many reasons why we'd ask this Court to reverse the subject matter jurisdiction ruling, vacate the remainder of the opinion, and remand for reconsideration of all the issues. Thank you. Thank you, Mr. Dietrich. And thank you to you and your colleagues and your firm for taking on this appointment in what's a difficult case. Both sides, the briefing was excellent in this case, and you give us a lot to think about on a very difficult issue. So thank you very much. We'll take the case under advisement.